Judge Green,
delivered the following, as the unanimous opinion of the Court:
If the appellant, provided he had not accepted the deed, would have been entitled to the relief for which he asks, his acceptance of the deed ought not to preclude him from claiming it now. The mistake in the quantity of the land, was not, and could not be ascertained, until after the execution of the deed. That was executed only three days after the execution of the contract. The deed may be evidence of the then understanding of the parties, as to the terms of the agreement, but not a bar to relief, if a proper case for relief in other respects, were made out.
Whether the circumstances of this case would or would not authorise the admission of parol evidence to explain the written agreement, it is unnecessary to decide. If the written contract be mistaken or equivocal as to its terms, the parties may explain it according to their real and original intention, either by a new instrument of writing, or by their admissions of record. The contract in this case was, upon its face, equivocal, and of doubtful construction. But, the appellant’s bill states the real terms of the agreement, to the same effect as the parol proofs in the cause. It slates, that “both parties, relying that the lands had been previously conveyed as containing about 10,000 acres, and consisting of old surveys, and upon the general reputation respecting the quantity of the said land, confidently expected that the real quantity would considerably exceed the estimated quantity, and that this belief operated on both parties in making the bargain;” and that “ during the whole negociation for the purchase, which continued seve *64 i’al days, the discussions of the parties turned principally on the price and terms of payment, and especially the title, which was then controverted by the executor of D. Ross', ^ut the quantity of land was taken for granted, to be from 10 to 12,000 acres, and upwards; and that a deficiency was never contemplated by the parties, and, consequently, was not provided for;” and that “his purchase was in gross, and no particular quantity was warranted.” This last declaration is equivalent to an assertion, that the purchase was not by the acre, or of any particular quantity of land; but of a tract of land in bulk, for a price in gross, upon the belief of both parties, that it would turn out 10 or 12,000 acres, or more; but, without regard to what it might actually turn out to be, and without contemplating a responsibility of either party, in case of an excess or deficiency. For, a sale by the quantity would have been in effect a warranty on the part of the vendor, of the quantity sold. This accords with the cotemporaneous construction given by the parties, in executing and accepting a deed for the entire tract of land, without the specification of boundaries or quantity. If 10 or 12,000 acres of land had been the subject of the contract, and the quantity had been considered as material, it would have been stated in the deed; the object of the deed being to convey what had been sold. The written contract is fairly susceptible of the same construction. If quantity was the real object of the purchase and sale, although the parties had not the means of ascertaining that truly, they would have stated, upon conjecture, a specific quantity; so as to afford some rule for the measure of compensation for the deficiency or excess, when ascertained. The indefinite expression of 10 or 12,000 acres afforded no such rule, and shews that the subject of quantity was not really in the contemplation of the parties, as one of the terms of the contract. It was an expression, apt enough as one particular of the description of the “tract of land” sold, and was probably introduced for that purpose only. This conclusion is warranted by the *65 terms of the contract, and is rendered certain by the admissions in the bill. The purchaser took upon himself the . risque of quantity and title; and although both parties were influenced, in their agreement as to the price, by the belief that the tract of land contained more than the estimated quantity, as stated in the conveyance from Ross’s trustees to Norvell; yet, the hazard of loss to one party, in the event of an excess, and to the other, in case of a deficiency, which, although not expected, was possible, would also influence the parties in fixing the price. It cannot be known or presumed, that if Tucker had insisted, that Norvell should warrant that the tract contained 10,000 acres, he would have consented to do so, upon any terms, or that he would have taken the price which he agreed to take, upon the contract in question.
- The estimation of the quantity was made by both parties, upon the same facts, which were equally known to both. Norvell did not take upon himself, to make any affirmation or representation in respect to quantity. He only declared his real opinion, founded upon the very same information which Tucker had, and in which the latter concurred with him, without being influenced by the opinion of the former. He concealed no fact within his knowledge, which could, in any degree, influence that opinion. He had not seen the receipts for taxes, and he was guilty of- no negligence (if that were material) in not searching for them, and examining them, as a means of ascertaining the quantity. The source of information on that subject, which he would most naturally and reasonably resort to, was, the conveyance under which his testator claimed; and being informed that the conveyance called for about 10,000 acres, he had no motive for further enquiry; and if he had, he could not have expected any thing like accurate information, from the Sheriff’s receipts for taxes.
This was, therefore, a contract of hazard, without any fraud, concealment, misrepresentation, or negligence, on *66 the part of the vendor. The error in respect to the quantpy 0f land, was mutual, and was not in relation to the substance of the thing contracted for, but in relation to the very hazard contemplated by the parties. The question is, whether the disappointed party is, in such case, entitled to relief; and this was the question which the appellant, with perfect frankness, intended to submit to the judgment of the Court.
There are cases in which the mutual error of the parties, without default in either, may be a just ground for rescinding a contract. As, if the error be in a matter which is the cause of-the contract, that is, in the substance of the thing contracted for, so that the purchaser cannot get what he bargained for; as in the case of a purchase of military lands on Paint Creels, stated to be located under specified warrants, and the warrants were located elsewhere; and of the purchase of an obligation at the risque of the purchaser, and the paper turned out to be forged, or the obligor to have been previously discharged from the obligation, under the statute of bankruptcy. In such cases, the contract ought to be vacated, even if it had been executed; and, if both the parties, in the first case, verily believed that the warrants were located on Paint Creek; and, in the other, that the obligation was genuine and the party bound by it; the object, in the first case, being to buy lands on Paint Creek; and, in the other, to buy a valid and subsisting obligation, the error would go to the substratum of the matter contracted for. Chamberlayne v. Marsh, 6 Munf. 283; Armstrong v. Hickman, Ibid. 287. But, if in the one case, the warrant had really been located on Paint Creek, and the parties had both been of opinion, from the general character of lands on that Creek, that the lands were of great value, and it had turned out that they were of very little value; or, if in the other, the obligation had been genuine and still binding upon the obligor, and both parties believed that he was in affluent circumstances and able to pay, and it turned out that he was, at the time of the contract, utterly insol *67 vent; the purchaser, in neither case, could have relief, since he has gotten that which was the cause of the contract, and the error was in relation to the very hazard, which the purchaser took upon himself. If relief could be given in such a case as the case at bar, a fortiori it should be given, if the vendor knew of the deficiency and concealed it. So that, in both cases, when the vendor knew, and when he was ignorant of the deficiency, relief being given, there could no lon - ger be a contract, in which a purchaser could take the risque of quantity effectually upon himself. The Court of Appeals have uniformly recognized the validity and obligation of such a contract, and in all cases in which they have given relief, it has been founded on circumstances either of fraud, misrepresentation or concealment; or mistake in part, or in whole, in relation to the substance of the thing contracted for. It is possible, that the case of Quesnell v. Woodlief 2 Hen. & Munf. 173, does not fall within this observation; but, the grounds of the judgment in that case are so uncertain, some of the Judges who decided it, the. Reporter and the counsel on both sides, who argued the cause, differing so materially in their statements of the reasons upon which the judgment was founded, that it cannot be considered an obligatory authority to the point now under consideration; and, if it were so considered, it has been repeatedly overruled.
The Court is unanimously of opinion, that the decree is right and ought to be affirmed.